BANK OF ALEXANDRIA v. YEATON.
See Case No. 858.

# Case No. 857.

## BANK OF ALEXANDRIA v. YOUNG.

### SAME v. YEATON.

[1 Cranch, C. C. 458.] [1]

Circuit Court, District of Columbia. Nov. Term, 1807. [2]

NEGOTIABLE INSTRUMENTS — CONSOLIDATION OF ACTIONS — BANK OF ALEXANDRIA — DISTRICT OF COLUMBIA — VIRGINIA LAWS.

1. The court will not order a number of actions of debt upon several promissory notes due at several times, to be consolidated, although the parties are the same in all, and each note was payable before any one of the suits was brought.

2. In an action by the Bank of Alexandria, upon a note made negotiable in that bank, the court will rule the defendant to trial at the first term, if the writ be served ten days before the return day.
[See note at end of case.]

3. Virginia had a right to legislate over this part of the district, until the 27th of February, 1801.

4. The charter of the Bank of Alexandria is a public act.
[See note at end of case.]

Mr. Youngs, for the defendant, moved the court to consolidate a number of actions of debt upon promissory notes, all the notes being due at the time of issuing the writs. Cecil v. Brigges, 2 Term R. 639. One action of debt, he said, might have included the whole; it is but one debt. The plaintiffs were not obliged to bring debt, they might have brought assumpsit for money had and received, and given the notes in evidence.

Mr. C. Simms, contra. This is a novel motion; there is no precedent for it in this District, or in Virginia. The English practice is founded upon a rule of their courts. Until this court has made a general rule on the subject, they will not depart from the former practice. The case cited was assumpsit; this is debt. That might have been on two items of one account. The declaration must have as many counts as notes. If the plaintiff should fail of supporting one note, he might fail for the whole, for he could not recover part of the debt. It is no oppression. The defendant ought to have paid the notes as they became due. How can they be consolidated? The defendant has given separate bail in each suit. There must be a new declaration which must conform to the writ, but to which writ? The court will not order these writs to be dismissed, and thereby discharge the bail; where successive actions are brought, the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 5 Cranch, (9 U. S.) 45; and Id. 49.]

English courts will not consolidate them. Tidd, Pr. 556, c. 25. The notes here became due at different times.

THE COURT refused to order these twenty-eight actions to be consolidated, because they were brought under the old practice, and no general rule had been made by the court on that subject. THE COURT said they would take into consideration the propriety of making such a general rule.

This was an action of debt against the maker of a promissory note, with an express consent in writing, that it should be negotiable in the Bank of Alexandria, according to the 20th section of the charter of the 23d of November, 1792, and the capias ad respondendum was served more than ten days before the return day of the writ; in which case, it is provided by that section, that "the court shall cause an issue to be made up in such suit, and a trial shall be peremptorily had at the first court to which such writ shall be returnable, and judgment rendered accordingly."

Mr. Simms, for the plaintiffs, moved for a rule on the defendant to plead on the next day.

Mr. Youngs, for the defendant, objected— 1. That the charter of the bank is a private act, and the printed book of the laws is no evidence of it. 2. That the charter of the bank expired on the first of January, 1803, by its own limitation in the act of 23d of November, 1792, unless extended by the act of Virginia of the 21st of January, 1801, which authorized the stockholders of the bank to hold their elections, and remove and conduct their business out of the District of Columbia, within the county of Fairfax, in Virginia, and extended the charter to the 4th of March, 1811. 3. That the power of Virginia to legislate for this part of the District of Columbia, ceased on the first Monday of December, 1800, when, by law, and in fact, the District became the seat of the government of the United States, and consequently the act of Virginia of the 21st of January, 1801, extending the charter, was not a law in force in this part of the District on the 27th of February, 1801, when congress enacted [2 Stat. 103] that the laws of Virginia, as they then existed, should be and continue in force here. 4. That by the rule of this court, the return day of all writs returnable to this court, is the day next after the close of the session.

Mr. Simms, in reply. By the act of Virginia, of 3d of December, 1789, ceding this territory to the United States, it is expressly provided, "that the jurisdiction of the laws of this commonwealth, over the persons and property of individuals residing within the limits of the cession aforesaid, shall not cease or determine until congress, having accepted the said cession, shall by law provide for the government thereof under their jurisdiction, in manner provided by the article of the constitution before recited." And by the act of congress of 6th July, 1790, (1 Stat. 130,) accepting the cession, it is provided, "that the operation of the laws of the state shall not be affected by this acceptance, until the time fixed for the removal of the government thereto, and until congress shall otherwise by law provide." Congress did not provide for the government of the district under their jurisdiction, until the 27th of February, 1801. Virginia, therefore, had a right to legislate for this district until that day, and the act of Virginia, of 21st of January, 1801, was valid and effectual to extend the charter of the bank, until the 4th of March, 1811.

THE COURT refused, upon this motion, to decide the questions as to the existence of the bank, and as to the admission of the statute-book in evidence of the charter, but laid the rule on the defendant to plead by 10 o'clock, A. M., of the next day.

At the expiration of the rule,—Mr. Youngs and Mr. Jones, for the defendant, made the same objections to pleading which Mr. Youngs had made to the laying of the rule to plead; and, after argument by Mr. Simms and Mr. F. L. Lee, for the plaintiffs, and Mr. Youngs, Mr. Jones, and Mr. E. J. Lee, for the defendant,—

THE COURT was of opinion, that the defendant ought to be ruled into a trial at this term. It is not necessary for this court to decide the question, whether the legislature of Virginia could legislate for the District of Columbia, after the first Monday of December, 1800. Because it is the opinion of the court that the act of congress of 27th of February, 1801, (2 Stat. 103,) adopted and thereby re-enacted all the laws of Virginia, then in force in Virginia, so far as they were applicable to the circumstances, and to the inhabitants of this District.

There is nothing in that act which forbids such a construction. The act of 21st of January, 1801, if sufficiently authenticated, must be admitted to have been a law of Virginia, in force on the 27th of February, 1801, and therefore within the letter of the act of congress passed on that day; and inasmuch as it is a law applicable to the circumstances of this District, it is certainly within the spirit of that act. If the act of Virginia, of January 21st, 1801, be one of the laws of Virginia, adopted by the act of congress of 27th of February, 1801, it is the opinion of the court that it needs no other authentication than the other laws of Virginia adopted by the same act of congress, which in effect has re-enacted it as if in totidem verbis; and being thus re-enacted by a public act, it becomes itself a public act.

[NOTE. These cases were brought before the United States supreme court on writs of error. The state of Virginia, in 1792, had passed an act incorporating the Bank of Alexandria; giving it the privilege of summary process for the recovery of debts, and depriving its debtors of

the right of appeal. This act was to expire by limitation in 1803, but the cession of Virginia territory including the town of Alexandria as a part of the District of Columbia was accepted by the United States, and the seat of the federal government was removed to the District in December, 1800. In January, 1801, Virginia passed an act continuing the charter until March 4, 1811, and authorizing the bank to transact business in the county of Fairfax. Congress, on February 27, 1801, passed an act that the laws of Virginia, as they then existed, should continue in force in the territory ceded by Virginia for the federal district. On a motion to quash the writ of error, (Mr. Chief Justice Marshall delivering the opinion,) the court held that the charter was a public act, and could be proved as such; that Virginia retained the right to legislate over that part of the District ceded by her until congress exercised its legislative power, and therefore that the Virginia act of January, 1801, continued the corporate existence of the Bank of Alexandria in the District of Columbia, which act, with the other laws of Virginia, was continued in force by congress, (Act Feb. 27, 1801.) But the portion of the act of incorporation taking away from debtors of the bank the right of appeal professed to regulate, and could regulate, only those courts which were established under the authority of Virginia. It could not affect the courts of the United States, or of any other state. Such a peculiar privilege, not necessarily belonging to the bank as a corporation, could not exist in the District, unless specially conferred by congress, so that debtors of the bank had the right of appeal from the decision of the circuit court. The motion to quash the writ of error was therefore overruled. Young v. Bank of Alexandria, 4 Cranch, (8 U. S.) 384. When the cases were heard on the merits, the judgment in Young's Case was affirmed. The opinion of the court, delivered by Mr. Chief Justice Marshall, was as follows: "The writ, being returnable to the court, is returnable the first day of the court. It was known to the legislature of Virginia that the appearance day, for all process, was the day after the term. When, therefore, they directed that a trial should be held at the return term, they must have intended that this case should be an exception to the general rule." Young v. Bank of Alexandria, 5 Cranch, (9 U. S.) 45. Mr. Justice Johnson delivered a separate concurring opinion, (page 54.) In Yeaton's Case, also, the judgment of the circuit court was affirmed. Marshall, C. J., in delivering the opinion of the court, said that by the law of Virginia, prior to the cession of the town of Alexandria to the United States, the indorser of a promissory note was liable only on the implied contract that he would pay the debt if, by due diligence, it could not be obtained from the maker; but if a usage by the bank existed, whereby the indorser was liable absolutely, and such was the understanding under which notes were discounted, the contract of indorsement might make the indorser absolutely liable, though the court did not pass upon this point authoritatively. The court held the indorser absolutely liable under section 20 of the bank charter, and that this applied to an accommodation indorser, for "the consideration moving from the bank to the maker of the note, on the credit of the indorser, charges both the maker and the indorser." Mr. Justice Johnson dissented on the ground that the words in the bank charter relied on by the majority of the court as making the indorser absolutely liable were not enacting words, but words of recital: that the courts of Virginia had decided that the bank could not sue the indorser without proving the maker's insolvency; and that the legislature had not intended to change the common law in this respect. Yeaton v. Bank of Alexandria, 5 Cranch, (9 U. S.) 49.]